IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF OKLAHOMA

DON E. SEELY,                              )
                                           )
                Plaintiff,                 )
                                           )
v.                                         )    Case No. CIV-07-1305-D
                                           )
JUSTIN JONES,                              )
                                           )
                Defendant.                 )

## REPORT AND RECOMMENDATION

Plaintiff Don Seely is a state prisoner who alleges a delay in shoulder surgery and seeks declaratory and injunctive relief. Defendant Justin Jones has filed a summary judgment motion,[1] which the Court should grant.

## STANDARD FOR SUMMARY JUDGMENT

Summary judgment is necessary when "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). In making this determination, the Court regards a fact as "'material' if under the substantive law it is essential to the proper disposition of the claim.'" *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 670 (10th Cir. 1998) (citation omitted). When a summary judgment motion is filed, "[t]he court views the record and draws all favorable inferences in the light most

---

[1] The Oklahoma Department of Corrections joined in the summary judgment motion. But this entity is not named as a party in the complaint.

favorable to the non-moving party." *Pepsi-Cola Bottling Co. of Pittsburg, Inc. v. PepsiCo, Inc.*, 431 F.3d 1241, 1255 (10th Cir. 2005) (citation omitted).

ALLEGED DELIBERATE INDIFFERENCE
TO SERIOUS MEDICAL NEEDS

The Plaintiff alleges deliberate indifference through a delay in clavicle surgery. Though the parties disagree on various facts, the material ones are not in dispute and Mr. Jones is entitled to summary judgment.

The Material Undisputed Facts

Mr. Seely alleges fracture of his clavicle on April 2, 2006.[2]  The Plaintiff was examined and given medication[3] and a sling.  Special Report of Review of Factual Basis of Claims Asserted in Civil Rights Complaint Pursuant to 42 U.S.C. Section 1983 at p. 3, Attachment 2 at p. 6 (Jan. 31, 2008) ("Special Report"); Plaintiff's Response at p. 2.  During the next 56 days, medical staff prescribed pain medication and range of motion exercises, restricted Mr. Seely's activities, obtained a magnetic resonance imaging ("MRI") test, and scheduled an examination by an orthopedic specialist at the University of Oklahoma Medical

---

[2]    *E.g.*, Plaintiff's Reply to Motion to Dismiss for Failure to State a Valid Claim Upon Which Relief May Be Granted or Alternatively, Motion for Summary Judgment and Brief in Support at p. 3 (Mar. 12, 2008) ("Plaintiff's Response").

[3]    In his response brief, the Plaintiff suggests that the medication was insufficient for his pain. Plaintiff's Response at p. 12.  Mr. Seely omitted this allegation in his complaint, and the Court should not consider a claim raised for the first time in a response brief.  *See Fisher v. Metropolitan Life Insurance Co.*, 895 F.2d 1073, 1078 (5th Cir. 1990) (stating that a claim raised for the first time in response to a defendant's motion for summary judgment was not properly before the district court).

2

Center.  Special Report at pp. 4-5, Attachment 2 at pp. 6-9, 26; Plaintiff's Response at pp. 2-3.

On May 30, 2006, an orthopedic specialist at the University of Oklahoma Medical Center examined the Plaintiff and authorized referral to the prisoner clinic to discuss options after review of a second MRI.  *See* Special Report at p. 5, Attachment 2 at pp. 30-31.  The parties agree that at that time, the orthopedic specialist did not mention surgery as an option,[4] although the parties disagree on the reasons.[5]

In July 2006, doctors conducted a second MRI and scheduled another examination at the University of Oklahoma Medical Center.  Special Report at p. 6, Attachment 2 at p. 12. Mr. Seely admittedly was placed in a "non-emergency" category.  Plaintiff's Response at p. 4 ¶ 12.

The parties agree that because of the medical center's schedule, an orthopedic specialist could not see the Plaintiff until September 29, 2006.  Defendant's Motion for Summary Judgment at p. 3 ¶ 12; Plaintiff's Response at p. 4 ¶ 12.

The parties disagree over the reasons for the delay in treatment, but agree on what took place.

For example, the Defendant states:

---

[4]     As noted below, some medical authorities favor non-surgical methods of treating clavicle fractures.  *See infra* note 10.

[5]     Motion to Dismiss for Failure to State a Claim Upon Which Relief May Be Granted or Alternatively, Motion for Summary Judgment and Brief in Support at p. 3 ¶ 10 (Jan. 31, 2008) ("Defendant's Motion for Summary Judgment"); Plaintiff's Response at p. 3 ¶ 10.

OU Medical Center's orthopedic specialists elected to initially treat Plaintiff's injury non-operatively with physical therapy and injections for pain. Meanwhile throughout Plaintiff's treatment and referrals for testing and specialist treatment outside of [James Crabtree Correctional Center], [its] medical staff continued to treat Plaintiff and prescribe pain medications in accordance with the treatment prescribed by the specialists treating Plaintiff's injury.

Defendant's Motion for Summary Judgment at p. 4 ¶ 13 (citations omitted).  The Plaintiff attributes the approach to false information given to the orthopedic specialists, but concedes that the Defendant's statement was "factually correct."  Plaintiff's Response at p. 4 ¶ 13.

The parties also agree that:

- Mr. Seely saw specialists at the University of Oklahoma Medical Center on February 9, 2007, and April 13, 2007;

- Mr. Seely obtained physical therapy three times in November 2006; and

- orthopedic specialists at the University of Oklahoma Medical Center did not recommend surgery until June 22, 2007.

Defendant's Motion for Summary Judgment at p. 4 ¶ 14, p. 5 ¶ 18; Plaintiff's Response at p. 4 ¶ 14, p. 5 ¶ 18.

The parties do not disagree over the fact that Mr. Seely is waiting on his surgery.  But the parties disagree on the reasons for the delay.  The Defendant attributes the delay to the scheduling priorities of the University of Oklahoma Medical Center.  Defendant's Motion for Summary Judgment at pp. 3-4.  Katryna Frech states under oath:

James Crabtree Correctional Center has no control over the scheduling of surgery services provided by Oklahoma University Medical Center . . . . Historically it is the practice of OUMC to prioritize their own surgery schedule.  Offender Seely's injury is non-emergent.  Upon notification from

4

OUMC of the date and time for offender Seely's surgery, he will be transport [sic] there to receive the additional medical care.

Special Report, Attachment 6.   Based on this evidence, the Defendant states that prison officials do not control the surgery schedule and that personnel of the medical center will dictate the date of the operation based on their own medical findings.   Defendant's Motion for Summary Judgment at p. 5 ¶ 19.   The Plaintiff agrees that this statement is "factually correct," but adds that he believes scheduling is affected by the availability of prison staff for transportation and security.   Plaintiff's Response at p. 5 ¶ 19.

Notwithstanding this concession, the Plaintiff broadly attributes all surgical delays to "JCCC medical staff."   Plaintiff's Response at p. 5 ¶ 21.   In support, Mr. Seely cites his affidavit, diary of medical treatment, and medical records.   *Id.* at p. 5 ¶ 21 (citing Exhibits 1-4, 6-7).   None of the cited documents suggest any reason for the delay other than scheduling delays by the University of Oklahoma Medical Center.   *See id.*, Exhibits 1-4, 6-7.

Mr. Seely alleges a constitutional violation stemming from the delay in surgery. According to the Plaintiff, the Defendant should have found another place for the operation rather than wait for the University of Oklahoma Medical Center.   Plaintiff's Response at

p. 13.[6]  The Defendant argues that the Plaintiff lacks evidence of deliberate indifference. Defendant's Motion for Summary Judgment at pp. 9-13.  The Defendant is correct.

The Constitutional Standard

The Eighth Amendment requires prison officials to "provide humane conditions of confinement" for inmates.  *Farmer v. Brennan*, 511 U.S. 825, 832 (1994).  As a result, deliberate indifference to a prisoner's serious injury is actionable under Section 1983.  *See Estelle v. Gamble*, 429 U.S. 97, 104-105 (1976).  A prison official violates the Eighth Amendment when the deprivation was "sufficiently serious" and resulted from "deliberate indifference" to an inmate's health or safety.  *Farmer v. Brennan*, 511 U.S. 825, 834 (1994).

The Absence of a Material Factual Dispute

The Plaintiff's version of events would not create liability because under the undisputed material facts, Mr. Jones was not deliberately indifferent to Mr. Seely's medical needs.

The parties agree that authorities have:

- prescribed medication,

- provided physical therapy,

- provided an MRI and X-rays,

---

[6]    Under state law, the Oklahoma Department of Corrections ("DOC") may refer prisoners to the University of Oklahoma Medical Center, and this facility must accept the patients.  *See* Okla. Stat. tit. 57 § 627(A) (2007 supp.).  The DOC may contract with other inpatient hospitals and, in "urgent" cases, may take prisoners to the closest inpatient hospital.  *See id.* § 627(B), (C) (2007 supp.).  But the Court has no information about the existence of DOC contracts with other providers or classification of Mr. Seely's situation as "urgent" by any medical personnel.

- afforded multiple examinations by an orthopedic specialist, and

- approved surgery.[7]

*See supra* pp. 2-5.

The evidence is undisputed that the University of Oklahoma Medical Center is responsible for scheduling surgeries and prioritizes them based on its own medical determinations. *See supra* pp. 4-5. And the Defendant provides unrebutted evidence that the University of Oklahoma Medical Center has classified the Plaintiff's priority as "non-emergent." *See supra* pp. 4-5. In light of these undisputed facts, the Court should conclude that the surgical delay does not constitute deliberate indifference to Mr. Seely's medical needs.[8]

Mr. Seely blames prison staff for falsifying medical records in two ways. Plaintiff's Response, *passim*. The first is that a prison physician allegedly identified the broken bone as a "deformity" rather than a fracture. Plaintiff's Response at p. 2 ¶ 8, p. 10. The second allegation involves mischaracterization of the Plaintiff's statement regarding a fracture before the accident on April 2, 2006. Plaintiff's Response at p. 6, Exhibit 1 at p. 3 ¶¶ 12-13.

---

[7]     Mr. Seely denies the existence of documents stating that he has been accepted for surgery. Plaintiff's Response at pp. 7, 11. But his own exhibit shows otherwise. *See id.*, Exhibit 7 (medical report from University of Oklahoma Medical Center showing that authorization for surgery has been "accepted" and that scheduling is "in-progress").

[8]     *See Johnson v. Mullin*, 422 F.3d 1184, 1186 (10th Cir. 2005) (in the absence of a doctor's statement that the prisoner's medical condition involved an emergency, a delay in treatment did not involve deliberate indifference); *accord Fletcher v. Butts*, 994 F.2d 548, 549 (8th Cir. 1993) (*per curiam*) (a delay in surgery did not reflect deliberate indifference, for purposes of the Eighth Amendment, when the orthopedist had not stated that emergency surgery would be necessary).

According to the Plaintiff, the fabrications caused the orthopedic specialists at the University of Oklahoma Medical Center to downplay the urgency of the operation.  Plaintiff's Response at p. 3 ¶ 10, pp. 3-4 ¶ 11, p. 4 ¶ 13, p. 10.

In certain situations, fabrication of medical records can support an inference of deliberate indifference.[9]  But in the present case, the Plaintiff's insistence on fabrication of medical records would not create a "material" dispute for two reasons.

First, regardless of whether prison doctors had originally described the injury as an old one or referred to the fracture as a separation, the orthopedic specialists at the University of Oklahoma Medical Center have admittedly conducted their own tests, examined Mr. Seely, and continue to regard the surgery as "non-emergent."  *See supra* pp. 3-5.[10]  Thus, the alleged fabrications would not support an inference of deliberate indifference in connection

---

[9]      *See Green v. Branson*, 108 F.3d 1296, 1304 (10th Cir. 1997) ("We are persuaded that a showing of deliberate refusal to provide medical attention, as opposed to a particular course of treatment, coupled with falsification of medical records may give rise to an Eighth Amendment violation and is cognizable under 42 U.S.C. § 1983." (citation & footnote omitted)).

[10]      The Plaintiff apparently assumes that the need for surgery would have been obvious if the orthopedic specialists had known of the fracture to his clavicle.  Mr. Seely's apparent assumption is questionable.  Four medical experts noted that "fractures of the clavicle are best treated non-operatively."  M.L. Mueller, M. Allgower, R. Schneider, & H. Willenegger, *Manual of Internal Fixation* 166 (2d rev. ed. 1979).  Two other medical authorities explained: "Fractures of the clavicle are usually treated conservatively.  Internal fixation may be indicated if the fragments are markedly displaced or compress the brachial plexus."  F. Sequin & R. Texhammar, *AO/ASIF Instrumentation: Manual of Use and Care* 250 (1981); *see also* C.M. Shoar & F.P. Kreuz Jr., *Manual of Fractures: Treatment of External Skeletal Fixation* 54 (1943) (stating that when a clavicle is fractured, "conservative treatment is sufficient" "[i]n most cases").  Even the Plaintiff submits medical literature suggesting that surgery is unusual for clavicle fractures.  Plaintiff's Response, Exhibit 8.  This document states: "It is unusual for a clavicle fracture to require surgery, and most often an attempt at treatment in a sling is made.  Surgery is required in some situations when either the skin is broken or if the fracture is severally displaced or shortened."  *Id.* at p. 1.

with the ongoing surgical delay. *See Lindwurm v. Wexford Health Sources, Inc.*, 84 Fed. Appx. 46, 48 (10th Cir. Dec. 18, 2003) (unpublished op.) (holding that an inmate's allegation of falsification of medical data did not prevent summary judgment in part because of the absence of evidence regarding a deliberate refusal to provide medical attention).

Second, the Plaintiff does not present any evidence that Mr. Justin Jones, the sole defendant, was aware of any alleged fabrication of medical records.   Thus, even if fabrication had taken place, it could not support an inference of deliberate indifference on the part of Defendant Jones.  *See id.* (holding that an inmate's allegation of fabrication in medical records did not prevent summary judgment in part because of the absence of "sufficient evidence to create a triable fact" regarding falsification).

For both reasons, the Plaintiff's allegations of fabrication would not create a material dispute for purposes of summary judgment.  In the absence of evidence involving deliberate indifference, Defendant Jones is entitled to summary judgment.

## NOTICE OF THE RIGHT TO OBJECT

The parties can object to the present report and recommendation.  Any such objection must be filed with the Clerk of this Court by May 12, 2008.  *See* W.D. Okla. Local Civil Rule 72.1.  The failure to timely object would foreclose appellate review of the suggested ruling.  *See Moore v. United States*, 950 F.2d 656, 659 (10th Cir. 1991); *cf. Marshall v. Chater*, 75 F.3d 1421, 1426 (10th Cir. 1996) ("Issues raised for the first time in objections to the magistrate judge's recommendation are deemed waived.").

STATUS OF THE REFERRAL

The referral is terminated.

Entered this 21st day of April, 2008.


_____
Robert E. Bacharach
United States Magistrate Judge